## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**JENNIFER L. WILSON,**

        **Plaintiff,**

        **v.**                          **Case No. 07-2263-JWL**

**WAL-MART STORES, INC.,**

        **Defendant.**
_____

## MEMORANDUM & ORDER

This case arises out of an alleged trip and fall incident by Plaintiff Jennifer Wilson at a Wal-Mart store. The first matter before the court concerns the Report and Recommendation of United States Magistrate Judge James P. O'Hara, issued April 7, 2008, (doc. 76), recommending that Plaintiff's Motion for Leave of Court to File an Amended Complaint ("Motion") (doc. 71) be denied. The second matter before the court is Defendant Wal-Mart's Motion for Summary Judgment (doc. 78). For the reasons stated below, Plaintiff's Objection (doc. 80) to the Report and Recommendation (doc. 76) is overruled, and both motions (doc. 71 and 78) are denied.

## I.    PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION

### a.  <u>Background</u>

Plaintiff's lawsuit was originally filed on May 29, 2007, in state court and removed to federal court by Defendant on June 20, 2007 (doc. 1). The court entered a Scheduling Order on

August 7, 2007, which included a September 7, 2007, deadline for filing motions to amend pleadings.  In the state court petition Plaintiff claimed that Defendant was negligent because of the manner in which rugs were placed on the floor, the lack of proper warnings, and its failure to properly maintain the rugs (doc. 1, Ex. A).  By motion filed April 3, 2008, Plaintiff seeks to add a claim against Defendant for negligent training and supervision of its employees and managers, as well as a claim for punitive damages (doc. 71-2).

Plaintiff objects to the magistrate judge's finding that there was no credible explanation for the six-week delay between the depositions of Defendant's employees and filing the motion to amend.  Plaintiff claims that the record reveals that the parties were engaged in a battle about the depositions of Defendant's subsidiary's employees that may have offered greater support for Plaintiff's requested amendments.   Plaintiff claims she sought amendment shortly after a resolution was reached on those issues.

### b.  Standard of Review

The standard of review applied by this court to the magistrate judge's Report and Recommendation depends on whether it relates to a nondispositive or dispositive pretrial matter. Typically, a magistrate judge's ruling on a motion to amend the complaint is a nondispositve motion.  *Pedro v. Armour Swift-Eckrich*, 118 F.Supp.2d 1155, 1157 (D. Kan. 2000) (*Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993); *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 366 (D. Kan.1998).  Specifically, when a magistrate judge grants leave to amend, it does not remove any claim or defense from the case and is, therefore, nondispositive. *McCormick v. City of Lawrence*, 2003 WL 158704, *1 (D. Kan. 2003) (citing Pedro, 118

F.Supp.2d at 1157; *Stetz v. Reehr Enterprises, Inc.*, 70 F.Supp.2d 119, 120 (N.D. N.Y. 1999)). "However, when the magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in the case, several courts have found such a ruling to be dispositive." *McCormick*, 2003 WL 158704, *1 (citations omitted).

Magistrate Judge O'Hara issued a recommendation that this court deny Plaintiff's motion. The bases on which he relied are Federal Rules of Civil Procedure 16(b)(4) and 15(a)(2). Rule 16(b)(4) requires a showing of good cause for violating a scheduling order. The magistrate judge concluded that no good cause was shown for filing the amended complaint after the September 7, 2007, deadline. He further explained that the motion should be denied based upon Plaintiff's "undue delay" and the resulting "undue prejudice" to Defendant. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with . . . the court's leave. The court should freely give leave when justice so requires."); *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (interpreting "when justice so requires," explaining that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc."). While mentioning that it is doubtful that Plaintiff has provided enough evidence to establish a prima facie claim for punitive damages, Magistrate Judge O'Hara declined to make a finding that the proposed claims were futile (doc. 76, at 4, n.6).

The punitive damages claim is a separate claim than any previously submitted, and therefore, denying Plaintiff's Motion to bring this claim is a dispositive matter. The negligent

supervision and training theory is not necessarily another claim, as Plaintiff has already asserted a claim for negligence, but is at least another theory of recovery for that negligence claim.

If ruling on a motion to amend a complaint is a nondispositive matter, the court reviews such orders under a deferential "clearly erroneous or contrary to law" standard of review. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir.2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir.1988)); 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a).  If construed as a dispositive matter, the court reviews the matter de novo. *McCormick*, 2003 WL 158704, *1. The court finds it unnecessary to determine which standard applies, particularly as to the negligent training and supervision issue, because Plaintiff's motion is denied under either the deferential or de novo standard.  The court, therefore, reviews de novo the recommended denial of Plaintiff's Motion in its entirety.

### c. <u>The court overrules Plaintiff's objection to the Report and Recommendation and denies the motion to amend the complaint.</u>

Courts in this District apply the standards set forth in Federal Rules of Civil Procedure 15(a) and 16(b) when the motion to amend a complaint is filed after the scheduling deadline. *In re Urethane Antritrust Litigation*, 2007 WL 1424327 (D. Kan. May 14, 2007) (applying Rule 15(a) and 16(b) where motion to amend complaint was filed after the scheduling order deadline); *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993) (same). Based on these standards, this court concludes that Plaintiff's Motion should be denied.

Plaintiff filed the Motion to amend on April 3, 2008, the evening before the pre-trial conference and almost seven months after the deadline set forth in the Scheduling Order.

Plaintiff has not shown good cause pursuant to Federal Rule of Civil Procedure 16(b)(4).  The deadline to file motions to amend the pleadings in this case was September 7, 2007.  Plaintiff based its motion to amend on depositions taken on February 13 and 19, 2008, claiming that newly discovered evidence from those depositions was the reason for the late amendment. Plaintiff, however, has given no reason that shows good cause for the failure to file the amended complaint until April 3, 2008.

When questioned during the pretrial conference as to why the Motion was not filed until April when the information was learned of in February, Plaintiff's counsel responded that there was mediation between the parties following the depositions of those employees. As noted by the magistrate judge, mediation and settlement efforts are not good cause to violate the Scheduling Order.   *See, e.g.*, *Rivera v. County of Willacy*, 2007 WL 1655303, *1 (S.D. Tex. June 6, 2007) ("[A]lthough the Court finds the parties' settlement efforts commendable and encourages the continuation of their negotiations, the mere possibility of settlement does not meet the standard of good cause for amending the Court's scheduling order.").  Plaintiff should have continued to pursue the litigation aspects of the lawsuit while discussing possible settlement options.

Also, Plaintiff now objects to the magistrate judge's Report and Recommendation on the basis that the record shows the delay was caused by the dispute about the subsidiary company's employees' depositions and that evidence "might have offered greater support for Plaintiff's requested amendments."  In the recording of the pre-trial conference, Plaintiff's counsel did not say that those depositions were potentially a basis to support the new claims, but rather that he was "pretty well occupied" with those depositions and it was a "struggle."  Furthermore, there is

no indication in Plaintiff's proposed amended complaint or the memorandum in support (doc. 72) that shows any relation to information from Defendant's subsidiary's employees obtained after the resolution of the dispute nor any indication that it was a reason for the delay. The fact that more support for a claim (for which Plaintiff alleges in her Motion that there is already a substantial basis for the claim) might have been discovered is not good cause for violating the Scheduling Order. If Plaintiff thought further depositions would support a new claim and that it really was a valid reason for the delay, Plaintiff could have filed notice with the court shortly after learning of the "new" information, indicating its intent to investigate the issues further and file an amended complaint in the future. Instead, Plaintiff gave no notice and filed the motion to amend the evening before the pre-trial conference, violating the Scheduling Order.

Moreover, as to the punitive damages claim, Plaintiff's counsel stated that the basis for that claim was not only from the February depositions of Wal-Mart's employees, but also from the initial disclosures served by Wal-Mart in late July 2007. Plaintiff, however, never indicated any intent based on those disclosures to file an amended complaint even though that information was obtained prior to the Scheduling Order deadline for filing motions to amend the pleadings. [1]

Moreover, Plaintiff's motion to amend was filed after an undue delay. Fed. R. Civ. Pro. 15(a); *Castleglen, Inc.*, 984 F.2d at 585. Undue delay is similar to the Rule 16(b)(4) good cause standard. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205, n.4 (10th Cir. 2006) (declining to expressly decide "whether a party seeking to amend its pleadings after the scheduling order

---

[1] When Magistrate Judge O'Hara asked Plaintiff's counsel why he did not file an amendment based on the information in the July 2007 disclosure, he only pointed to facts learned in February that related to actions by Wal-Mart employees after Plaintiff's fall, namely that Wal-Mart continued to use the worn rug after the fall, which is irrelevant as to the mental state towards Plaintiff in a claim for punitive damages.

deadline" must satisfy the "good cause" requirement because of the "rough similarity between the 'good cause' standard of Rule 16(b) and [the] 'undue delay' analysis under Rule 15."). For substantially the same reasons that the court concluded the Plaintiff has not shown good cause, the court also concludes that Plaintiff unduly delayed in filing its Motion.

Defendant would also suffer undue prejudice as a result of this late motion to amend. As stated at the pre-trial conference hearing, Defendant would have to obtain an expert witness regarding Plaintiff's negligent training and supervision claim. As stated by the magistrate judge, "the court essentially would have to reopen discovery, extend the deadline to file dispositive motions, and delay the trial setting." (doc. 76, at 4). Defendant has now already filed its Motion for Summary Judgment, subsequently discussed, as the deadline for the dispositive motions was only eight days after Plaintiff filed its Motion. This court agrees with the magistrate judge that "to grant [P]laintiff leave to amend her complaint at such a late point in the case would cause defendant undue prejudice and would likely result in a delay of the trial." (doc. 76, at 4).

Additionally, the claim for punitive damages is likely futile. *Castleglen, Inc.*, 984 F.2d at 1585 (interpreting "when justice so requires," explaining that "[r]efusing leave to amend is . . . justified upon a showing of . . . futility of amendment"). To bring a claim for punitive damages the plaintiff has "the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. § 60-3702(c). Plaintiff alleges that Wal-Mart was wanton when the managers knew of the dangerous condition of the worn and torn rug but allowed it to be traversed upon by the customers, both before and after Plaintiff's fall. Plaintiff has provided no cases which are factually similar that have supported a claim for punitive damages. Whether or

not Defendant continued to use the rug after the fall is irrelevant in a punitive damages claim asserted by this Plaintiff.  As to its actions prior to the fall and the intent of Defendant towards Plaintiff, Plaintiff's proposed amended complaint shows factual allegations consistent with its claim for negligence but sets forth little to nothing as to Defendant's agents' mental attitude toward plaintiff such as "a realization of the imminence of danger and a reckless disregard and indifference to the consequences" prior to or during the fall.  *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511, 518 (Kan. 1986) ("We have defined a 'wanton act' as something more than ordinary negligence but less than a willful act. It must indicate a realization of the imminence of danger and a reckless disregard and indifference to the consequences.  'Wantonness' refers to the mental attitude of the wrongdoer rather than a particular act of negligence."). Plaintiff, therefore, likely does not satisfy the standard of "wanton conduct" on the part of Defendant, which is the basis on which it contends its punitive damage claim is based.

To allow Plaintiff to substantially amend its complaint at this juncture with so little justification either for her delay or the merits of her proposed contentions would be contrary to the reasonable and efficient processing of litigation that is of utmost importance in attempting to provide all parties a just, speedy and inexpensive resolution of their disputes.  *See* Fed. R. Civ. P. 1.  Plaintiff has not met the applicable standards, so the court overrules its objection to the Report and Recommendation and denies its Motion.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### a.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

9

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### b.  <u>Statement of Facts</u>

Plaintiff Jennifer Wilson is a Kansas resident. Ms. Wilson often shops at a Wal-Mart store in Shawnee, Kansas.  On May 30, 2005, Ms. Wilson arrived with her boyfriend at that Wal-Mart store, which Defendant Wal-Mart Stores, Inc. operated on that date and continues to operate.  Ms. Wilson separated from her boyfriend and wandered through the aisles, placing items in her basket. She was walking through the produce department when she fell.

There were rugs on the floor of the produce department where Ms. Wilson fell.  She felt something grab her foot right before the fall.  She looked at the rugs after her fall.  One side of one rug was curled under itself, such that the top surface was touching the floor. The edge of another rug was overlapping the rug that was curled under.   That rug was flipped up and folded toward where she had fallen.  Ms. Wilson believes that the positioning of the rugs that she observed after the fall, including the mat that was curled under, could not have been caused by her fall, but that the overlapping rug was pulled back towards her as a result of her fall. Plaintiff did not inspect the rugs on which she fell.  She felt that the rugs were unsafe because one rug was overlapping another rug and another rug was curled under it.  Ms. Wilson believes that a

male employee of Wal-Mart saw her fall and CMI[2] records show there was surveillance video of the fall, but Wal-Mart has not produced either of them.

Wal-Mart associates place rugs on the floor in their stores, but Ms. Wilson did not see any Wal-Mart employee placing the rugs or causing the bunched up condition of the rugs.  She does not know who caused the bunched up condition of the rugs or how long the mats were in that condition prior to her fall.  Plaintiff and her counsel returned to Wal-Mart at some time in 2007 to take pictures of a re-creation of the bunched up condition of the rugs that Ms. Wilson observed after her fall.  The bunched up condition of the rugs, however, is not the only allegation of an unsafe condition, as set forth in the Pretrial Order.

Assistant Manager Christopher Theole responded to the scene after the code white was called over the speaker system. When Co-Manager Michael Stalling arrived shortly after Mr. Theole, Mr. Stalling took over the situation.  Mr. Theole, therefore, was not involved in taking the report of the incident; Mr. Stalling drafted the report.

Notes from a statement to CMI on May 31, 2005, indicate Mr. Theole stated that there was wear and tear on the carpet, the lip (edge) was approximately 1/2 inch up, and the rugs were overlapped.  He said that the rug had been at the store for a month and "it has been no different."

Mr. Stalling made notes at the scene of the accident, which state "sandals - caught foot on carpet edge."  The claim description on the incident report states that "CUST TRIPPED ON CARPET EDGE IN PRODUCE."  He does not remember where he got the information but

---

[2] Claims Management Incorporated is a subsidiary of Wal-Mart that handles claims for customer incidents for Wal-Mart.  Co-Manager Michael Stalling testified there was no video or surveillance of the area.  Wal-Mart Assistant Manager Christopher Theole stated to CMI that there is a video of the incident but it is just not very clear.

typically he asks what happens and writes that down since he did not personally witness the incident. When asked if the information he received came from third parties, he responded that if Ms. Wilson is a third party, then yes.

Mr. Stalling does not have an independent recollection of the rugs that day.  Mr. Stalling took photographs of the scene, and to his knowledge the scene depicted in the pictures was the same as when he first arrived.  Ms. Wilson testified that the Wal-Mart employee that she thinks observed her fall came over and swept up the debris and cleaned up the scene after her fall. On review of the photographs provided by Mr. Stalling, CMI personnel concluded that the photographs show "It is in produce.  There [are] 3 long mats sitting up against the produce bunkers.  The[y] are overlapping each other.  Nothing appears defective with the mats.  One end of the mat appears to be curb app[r]ox 1/4 of an inch."

Mr. Stallings testified that he was expected by Wal-Mart to tour the store several times throughout the day looking for and correcting unsafe conditions.  All associates and managers at Wal-Mart also are expected to and obligated to correct unsafe conditions if they see them.  The monitoring is constant and continual. The rugs are at the store for safety reasons, but Mr. Stallings did not know why the rugs were overlapped.  Wal-Mart training documents indicate that employees are to conduct safety sweeps of the store, looking for and correcting "upturned corners of carpets or mats," and they are also to ensure that mats in front of fruit bins lay flat.

As a result of the May 30, 2005, incident, Ms. Wilson suffered a fractured patella and underwent surgery.

    **c.   <u>Analysis</u>**

### i.  Elements of negligence

To establish the elements of negligence under Kansas law, Plaintiff must establish that defendant owed a duty to the plaintiff, that defendant breached that duty, that plaintiff was injured, and that a causal connection existed between the duty breached and the injury sustained. *Honeycutt v. City of Wichita*, 836 P.2d 1128, 1136 (Kan. 1992). "Usually, a determination of the presence or absence of negligence should be left to the trier of fact," unless the facts of the case will support only one conclusion and reasonable minds could not differ as to that conclusion. *Lay v. State, Dept. of Transp.*, 23 Kan. App. 2d 211, 928 P.2d 920, 924 (Kan. App. 1996)

### ii.  Liability of the proprietor of a business

The parties have stipulated that Wal-Mart owed a duty to Ms. Wilson.  The record reveals that the duty arises from Ms. Wilson's invitee status, as she was shopping at Wal-Mart.  *See Gerchberg v. Loney*, 576 P.2d 593, 596 (Kan. 1978) ("An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee."), *overruled on other grounds by Bowers v. Ottenad*, 729 P.2d 1103, 1114 (Kan.1986).

Under Kansas law, the duty owed by the owner of a business to a business invitee is to exercise reasonable care to keep the premises safe and to warn an invitee of dangers which the owner knows of by exercising reasonable care. *See Sewell v. Wal-Mart, Inc.*, No. 91-4053-S, 1992 WL 198874 (D. Kan. Aug. 5, 1992). Under Kansas law, the liability of the proprietor of a business stems from superior knowledge concerning the conditions and failing to warn people of the risks. *See Eades v. Wal-Mart Stores, Inc.*, No. 91-1471-K, 1992 WL 276637 (D. Kan. Sep. 16, 1992).  However, a proprietor is not an insurer against all accidents. *See id.*

> With respect to a [P]laintiff's burden of proving that the proprietor of the store in which the plaintiff was injured had notice of an alleged dangerous condition, the court divided the cases into two classes: (1) injury to customers caused by dangerous conditions negligently created or maintained by the proprietor or his servants; and (2) injuries due to dangerous conditions coming about through no active fault of the proprietor, and not involving an instrumentality employed by him in the conduct of his business.
>
> In the first category, the dangerous condition is traceable to the proprietor's own act, that is, a condition created by him or under his authority, or one in which he is shown to have taken action. In such a case, plaintiff need not show that the proprietor of the business had notice of the dangerous condition. Under the cases in the second class, where the floor has been made dangerous by the presence of a dangerous condition traceable to persons for whom the proprietor is not responsible, proof of the proprietor's negligence requires a showing that he had actual knowledge of the dangerous condition, or that the dangerous condition existed for such a length of time that in the exercise of reasonable care the proprietor of the business should have known of it.

*Sipple v. Sears, Roebuck & Co.*, 553 F.Supp. 908, 909 (D. Kan. 1982) (applying Kansas law).

### iii.  Theory of recovery based on dangerous conditions created or maintained by Defendant or its agents

Plaintiff's first theory of recovery falls under the first class of cases.  She contends that Wal-Mart negligently created and/or maintained the dangerous conditions of the rugs, that there was a leading edge of the first rug runner curled up and the middle rug runner with the back edge underneath itself.  (doc. 77, ¶ 6a(1)).  Wal-Mart claims that Ms. Wilson has not provided any evidence that the conditions of the rugs are traceable to Wal-Mart's actions, so summary judgment should be granted in its favor.

The facts show that Wal-Mart associates placed the rugs in the area in which Ms. Wilson tripped and fell and had been there for approximately a month before the fall.  Ms. Wilson stated that she felt something grab her foot before falling.  CMI, which manages claims on behalf of Wal-Mart, reviewed the photographs taken by Mr. Stalling.  CMI wrote in a report that the rugs

were overlapping, and Ms. Wilson was walking from the opposite end of the overlap. Additionally, CMI also noted that based on the pictures "[o]ne end of the mat appears to be curb[ed] approx 1/4 inch."   Another CMI documentation indicates that Mr. Theole stated that there was wear and tear on the carpet, the lip (edge) was approximately 1/2 inch up, and the rugs were overlapped.   He said that the rug had been at the store for a month and "it has been no different."

Based on this evidence, there are facts from which a rational trier of fact could conclude that Wal-Mart was negligent in creating an unsafe condition or in its maintenance of the rugs. Its associates placed the rugs on the floor, the edge of the first rug is worn, and the edge is curved up 1/4 of an inch.   Mr. Theole also stated to CMI that the rug had been in the store for a month and "it had been no different."   From these facts, a jury could infer or conclude that the wear and tear may have happened prior to placement in the store so that Wal-Mart was negligent is placing the rugs on the floor in that condition.   Moreover, a jury could conclude that by allowing the rug to remain on the floor with the worn and curved edge, a condition that does not happen overnight, Wal-Mart did not exercise reasonable care in its maintenance, or lack thereof, of the rugs.

There are also facts from which a jury could conclude that Wal-Mart negligently created the condition by placing the rugs in an overlapping fashion that caused the edge of the first rug to be higher than the other rug.   A trier of fact could reasonably infer or conclude that this overlapping placement of the rugs by Wal-Mart's agents created an unsafe condition on which a customer could trip.   Alternatively, one could conclude that the overlapping nature of the rugs led to the bunching, and therefore, that the condition was traceable to Wal-Mart.   This is

particularly the case in a shopping area in which customers such as Ms. Wilson may walk in the direction opposite of the overlap.  Because of the overlapping nature of the rugs caused by Wal-Mart's agents, a customer's direction of movement may move the runner rug in the opposite direction of the overlap, thereby making the rugs bunch or curl.

Overall, it reasonably can be inferred from the evidence, therefore, that the condition of the worn rug with the turned-up corner and the bunched nature of the mats were traceable to Wal-Mart, that they caused the feeling of something grabbing Ms. Wilson's foot, and ultimately caused her to fall.  Wal-Mart's summary judgment motion on this basis is denied.

### iv.  Theory of recovery based on dangerous conditions not traceable to Defendant or its agents

Ms. Wilson's second theory of recovery is that Wal-Mart was negligent when it did not discover the conditions of the rug runner in a reasonable amount of time.  One of Ms. Wilson's contentions on this basis is that Wal-Mart was negligent when it did not discover the frayed or defective rug runner (the rug runner showing wear and the corner edge curved up) for a reasonable amount of time.  (doc. 77, ¶ 6a(2); 5a(2)).  Wal-Mart argues that Ms. Wilson has failed to present competent evidence that the defendant had notice of the condition of the rugs at the time of Ms. Wilson's fall.

The court finds that there is sufficient evidence to support the inference that defendant had either actual or constructive knowledge of the worn condition of the rug.  Like the infamous dirty or dark banana peel that shows a passage of time, a worn carpet could also permit a trier of fact to infer the passage of time sufficient for constructive notice.  *See generally Sipple*, 553 F.Supp. at 909 (discussing *Anjou v. Boston Elevated Railway Co.*, 208 Mass. 273, 94 N.E. 386

(1911), in which the court held there was sufficient evidence to sustain directed verdict where the appearance and condition of the banana peel was black, dirty and flattened because "the inference was permissible that the dangerous banana peel had been on the floor for a long enough period of time that defendant would have constructive notice of its presence"). Combining this inference of a "passage of time" with the fact that Wal-Mart employees continually conduct safety checks, including checking of the carpets (and for upturned corners), a trier of fact could infer either actual or constructive notice of the condition of the worn rug runner.  Wal-Mart's summary judgment motion based on an absence of evidence of notice is denied.

### v.  Wal-Mart's other alleged bases for summary judgment

Wal-Mart's remaining contentions are issues for the trier of fact.  There is not only one conclusion that can be drawn from the facts, as Wal-Mart alleges, and therefore, these issues are not appropriate for summary judgment.  Whether the conditions were open and obvious is for the jury to determine. *Bell v. Andler Corp. Inc.*, 1992 WL 331282 (D. Kan. 1982) (whether a possessor of land is liable for known or obvious condition "is an issue for the jury to determine"); *Miller v. Zep Manufacturing Co.*, 249 Kan. 34, 815 P.2d 506, 514 (1991) ("[T]he possessor may be under an affirmative duty to minimize the risk if there is reason to expect an invitee will be distracted . . .").  Whether the rugs caused Ms. Wilson's fall also is an issue for the trier of fact.  *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043, 1045 (Kan. 1989) ("Causation, like negligence, is also usually determined by a jury."); *see also Yount v. Deibert*, 282 Kan. 619, 631, 147 P.3d 1065, 1074 (Kan. 2006) ("[A]lthough it cannot be said with absolute mathematical certainty that the defendants' activities caused the [damage], there

certainly appears to be sufficient circumstantial evidence to create a question of fact concerning causation.").   Similar to the causation element of Plaintiff's negligence claim, whether Plaintiff's own negligence was a superseding cause also is an issue for the trier of fact; Wal-Mart has not proven Ms. Wilson was negligent as a matter of law or that the alleged negligence was a superseding cause.   *See St. Clair*, 781 P.2d at 1045; *see also Reynolds v. Kansas Dept. of Transp.*, 273 Kan. 261, 269, 43 P.3d 799, 805 (Kan. 2002) ("Intervening and superseding causes, which cut off liability for earlier negligence, are . . . recognized in *extraordinary* cases." (Emphasis added)); *Little v. Butner*, 186 Kan. 75, 84, 348 P.2d 1022 (Kan. 1960) ("[I]t is not contributory negligence for a business invitee upon the premises to fail to look out for danger when there is no reason for an ordinarily prudent person to apprehend a peril.").

## III.   CONCLUSION

Plaintiff's Objection to Report and Recommendation of Magistrate (doc. 80) is overruled. Accordingly, her Motion for Leave to Amend Complaint against Defendant Wal-Mart for Additional causes of action for negligent training and supervision and for punitive damages (doc. 71) is denied because she did not meet the standards of Federal Rules of Civil Procedure 15 and 16.  Defendant's Motion for Summary Judgment (doc. 78) also is denied because it has not shown that when the evidence is viewed in light most favorable to the nonmoving party that it is entitled to judgment as a matter of law in this negligence case.

**IT IS SO ORDERED.**

Dated this 30th day of June, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge